IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2019

**MALIK HARDIN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 109057   Bob R. McGee, Judge**

_____

**No. E2018-00676-CCA-R3-PC**

_____

The Petitioner, Malik Hardin, filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the Appellant, Malik Hardin.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On March 22, 2011, the Petitioner was indicted for possession of more than 26 grams of cocaine with the intent to sell within a drug-free school zone; possession of more than 26 grams of cocaine with the intent to deliver within a drug-free school zone; possession of a firearm with the intent to go armed during a dangerous felony; being a convicted felon in possession of a weapon; possession of marijuana; and criminal trespass. After the indictment was returned, the Petitioner filed a motion to suppress the evidence obtained as a result of his arrest and the seizure of the vehicle. State v. Malik

Hardin, No. E2014-00873-CCA-R3-CD, 2015 WL 3794588, at *1 (Tenn. Crim. App. at Knoxville, June 12, 2015), application for perm. to appeal denied, designated not for citation, (Tenn. Oct. 15, 2015).

At the suppression hearing, the proof revealed that on May 5, 2010, Knoxville Police Officer Brandon Wardlaw and Sergeant Chris Bell were walking patrol in the Austin Homes Housing Development, which was a "property of Knoxville Community Development Corporation ('KCDC')." Id. at *1. They saw a vehicle, and Officer Wardlaw recognized that one of its occupants, Chancey Johnson, was on KCDC's "no trespass list." Id. The vehicle parked, and the driver, the Petitioner, exited the vehicle. Id. Officer Wardlaw approached him and asked for identification. Id. The Petitioner responded "that he did not have identification, that he was on parole, and that he was 'on KCDC trespass.'" Id. After a consensual search of the Petitioner, Officer Wardlaw found two cellular telephones and a stack of money held together by rubber bands. Id. at *2. The Petitioner denied having keys to the vehicle he had been driving. Id.

Sergeant Bell and Officer Wardlaw looked inside the vehicle and, in plain view, saw the butt of a handgun. Id. A police dog was brought to the scene, and it reacted positively to the vehicle. Id. After obtaining a search warrant, the officers searched the vehicle and found a loaded pistol, a Tupperware container containing marijuana, crack cocaine, powder cocaine, a computer case containing a laptop computer, and approximately $20,000 in cash. Id. at *2-3. The Petitioner's fingerprint was on the Tupperware container. Id. at *3. Officer Wardlaw testified that he did not issue a citation to the Petitioner and release him because the criminal trespass probably would continue after the issuance of the citation. Id. at *2. At the conclusion of the hearing, the trial court denied the suppression motion. Thereafter, the Petitioner decided to plead guilty.

At the guilty plea hearing, the State summarized the terms of the plea agreement as follows: the Petitioner agreed to plead guilty to possession with intent to sell less than half a gram of cocaine within a drug-free school zone, a Class B felony, and receive a sentence of twelve years as a Range II, multiple offender. Because the offense was committed in a drug-free school zone, the Petitioner was required to serve the entire twelve-year sentence in confinement "day for day, prior to release consideration." The Petitioner also agreed to plead guilty to possession of a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony, and receive a sentence of three years. The Petitioner was required to serve one hundred percent of the sentence in confinement "with some reduction up to 15 percent." The three-year sentence was to be served consecutively to the twelve-year sentence. Additionally, the Petitioner agreed to plead guilty to possession of marijuana, a Class A misdemeanor, and receive a sentence of eleven months and twenty-nine days. He also agreed to plead guilty to criminal trespass, a Class D misdemeanor, and receive a sentence of thirty days.

- 2 -

Pursuant to the plea agreement, the misdemeanor sentences were to be served concurrently with each other and with the twelve-year sentence. The remaining charges were dismissed. Defense counsel agreed that the terms announced by the State were correct.

Before accepting the plea agreement, the trial court informed the Petitioner that his pleas must be entered voluntarily and that he could not be forced to plead guilty. The trial court repeated that "the agreement is a total effective sentence of 12 years at 100 percent, plus three years at least 85 percent, so that'd be 15 years." The Petitioner acknowledged the trial court correctly summarized his understanding of the plea agreement and agreed that he had reviewed the plea agreement with trial counsel and that he understood the agreement. The Petitioner further acknowledged that he understood the rights he was forfeiting by pleading guilty and that he was pleading guilty freely, voluntarily, and knowingly. The trial court cautioned "that there will be no further proceedings or hearings to determine your guilt in these cases. This is the final step. This is it." The trial court then asked if the Petitioner had any questions, and the Petitioner responded that he did not. After the State recited the factual basis for the pleas, which was substantially the same as the proof adduced at the suppression hearing, the trial court gave the Petitioner another opportunity to speak, but he declined. The trial court then accepted the Petitioner's guilty plea, reiterating that the Petitioner was receiving "a total 15-year sentence. The first 12 years at 100 percent, . . . the next three years at a minimum of 85 percent."

As a condition of his guilty pleas, the Petitioner reserved the following certified questions of law:

> "1. Whether the arresting officer's reliance on [Tennessee Code Annotated section] 40-7-118(c)(2) when arresting the [Petitioner] for the offense of criminal trespass was 'objectively reasonable' under the Fourth and Fourteenth Amendments to the United States Constitution and article I, [section] 7 of the Constitution of the State of Tennessee.

> 2. Whether the seizure of the automobile, in which the trial court found the [Petitioner] had a reasonable expectation of privacy, was based upon reasonable suspicion that the automobile was or contained evidence or fruits of criminal activity at the time it was seized and whether there was reasonable cause to believe that impoundment was reasonably necessary under the circumstances."

Id. at *7. On appeal, this court held that because issuing a citation would not stop the ongoing trespass, an exception to the cite and release statute applied, and the officer was authorized to arrest the Petitioner for the misdemeanor committed in the officer's presence. Id. at *8. Further, this court held that the pistol was found in plain view, which "did not offend constitutional limitations on searches and seizures," and that the seizure and search of the vehicle was constitutionally permissible pursuant to the automobile exception to the warrant requirement. Id. at *9. Accordingly, this court upheld the Petitioner's convictions.

Subsequently, the Petitioner filed a pro se petition for post-conviction relief, alleging that (1) he was denied due process when the trial court denied his motion to suppress evidence gathered after the police illegally seized him; (2) he was denied due process when the trial court denied his motion to suppress evidence gathered after the police illegally searched his vehicle; (3) he was denied due process when the trial court imposed a Range II sentence of twelve years for the drug conviction; (4) trial counsel advised him that he would have to serve the Range I minimum sentence of eight years in confinement for the drug conviction, but the State materially altered the written plea agreement "by adding in handwriting Range II and 100%" after he entered the guilty pleas; and (5) trial counsel was ineffective by failing to raise the proper issues in a certified question in his direct appeal.

Post-conviction counsel was appointed, and an amended petition was filed. In the amended petition, the Petitioner alleged that his guilty pleas were not voluntary or knowing because he thought he was pleading guilty to a Range I sentence. The Petitioner alleged that the written plea agreement was altered after he signed it to reflect that he was accepting a Range II sentence. The Petitioner contended that "he would not have entered the plea agreement if he had been aware he would have to serve 100% of twelve years for the drug felony conviction alone, rather than 100% of eight years for that offense (and up to four more years at 30%)." The Petitioner further alleged he did not understand that trial counsel did not include in his certified question the issue of "whether his arrest for criminal trespass was invalid due to the consent of the tenant for him to be on the property in question."

At the post-conviction hearing, the Petitioner testified that after trial counsel was appointed to represent him, they discussed the facts of the case. They reviewed the circumstances under which the State obtained incriminating evidence from the Petitioner, and a motion to suppress the evidence was filed. Following the denial of the motion, the Petitioner decided pleading guilty was in his "best interest."

The Petitioner said trial counsel advised him that the State had offered a plea agreement whereby he would plead guilty to the drug offense and the firearm offense and receive a twelve-year sentence and a three-year sentence respectively. The trial court

ordered that the sentences be served consecutively for a total effective sentence of fifteen years. The Petitioner said that trial counsel explained that the drug offense occurred in a school zone; therefore, the Petitioner was required to serve eight years of the twelve-year sentence in confinement, which was the minimum sentence for a Range I, Class B felony. Thereafter, the Petitioner would serve his three-year sentence for the firearm conviction. The Petitioner said trial counsel explained that the Petitioner would have to serve one hundred percent of the three-year sentence but that he could earn a maximum of fifteen percent sentence reduction credits. Trial counsel did not advise the Petitioner that he was pleading guilty as a Range II offender; therefore, he would be required to serve the entire twelve-year sentence in confinement without the possibility of earning any credit or early release. The Petitioner said that if he had known he was being sentenced as a Range II offender, he would not have accepted the plea agreement.

The Petitioner said trial counsel told him that the certified question would challenge "whether the officer's decision was objectively reasonable when dispensing with the cite and release statute and the seizure of [the Petitioner's] vehicle, whether it was with probable cause or reasonable suspicion." The Petitioner said he did not understand that the certified question did not include whether he had committed a knowing trespass. The Petitioner said that in his discussions with trial counsel, he was "persistent" that he would plead guilty only if he were allowed to appeal "[e]verything" about the trial court's denial of his suppression motion. He explained that a KCDC tenant had invited him to come onto the property and that he wanted to challenge whether the officer had reasonable suspicion to detain him or probable cause to arrest him for criminal trespass under those circumstances. The Petitioner said that if he had known trial counsel did not reserve that issue, he would have rejected the plea agreement.[1]

The Petitioner said that he was happy with the plea agreement sentencing him as a Range I offender. However, he was displeased that trial counsel allowed the prosecutor to change the plea agreement so that the Petitioner was sentenced as a Range II offender and had to serve one hundred percent of his sentence in confinement.

The Petitioner said that he wanted to be able to "challenge perjured testimony that occurred . . . in the Trial Court and went to the Appellate Court. Whatever remedy provides me where I can challenge the breach of a plea agreement, the specific performance of the plea agreement, whatever, that's the remedy that I'm requesting of the Court."

On cross-examination, the Petitioner acknowledged that he had prior experience with the criminal justice system and that he had pled guilty to other offenses. The

---

[1] In the Petitioner's motion to suppress, he acknowledged that the officers detained and arrested him for criminal trespass "after determining that he was on the 'no-trespass' list for KCDC property."

Petitioner said that the State did not file a notice of enhancement but that he was aware he had sufficient prior convictions to classify him as a Range II offender.

The Petitioner said that the night before the guilty plea hearing, trial counsel and the defense investigator brought the plea agreement to the Petitioner at the Knox County Detention Center. Trial counsel explained the plea then asked if the Petitioner had any questions. The Petitioner asked about the twelve-year sentence for the drug conviction. The Petitioner noted that the agreement had "minimum, maximum punishment, 8 to 12 years. It didn't say Range I, Range II . . . ." The Petitioner asked if he would be pleading as a Range I offender, and trial counsel said yes. Additionally, the plea agreement did not mention he would be required to serve one hundred percent of any sentence, and he asked trial counsel if he had to serve the minimum sentence of eight years at one hundred percent.

The Petitioner acknowledged that he knew he was accepting a total effective sentence of fifteen years. He also knew that the drug conviction was for an offense that occurred in a drug-free school zone and that he would be required "to serve the entire minimum of whatever range that [he was] sentenced in." The Petitioner thought he would be sentenced as Range I offender because the State had not filed a notice of enhancement.

Regarding his specific understanding of the sentencing portion of the plea agreement, the Petitioner said that he understood "the first eight would be at 100 percent," that "the back three . . . was at 100 percent," and that how he would serve the four years remaining on the twelve-year sentence would be left to the parole board's discretion.

The Petitioner did not disagree with the sentence he received for the firearm conviction, but he disagreed with the sentence for the drug conviction. He acknowledged that he heard the State announce at the guilty plea hearing that he would have to serve the entire twelve-year sentence. He said that after the State made the announcement, he told trial counsel that he thought he was pleading as a Range I offender. The trial court also advised the Petitioner that he was receiving a "sentence of 12 years, at 100 percent . . . [p]lus three years at at least 85 percent. . . . So that would be 15 years." The Petitioner did not correct the trial court because trial counsel told him to be quiet and that the terms of the plea agreement were controlling. The Petitioner followed trial counsel's advice because he did not want to "mess something up" and because he thought trial counsel might be "using some type of legal strategy." The Petitioner acknowledged that he told the trial court that he was entering the guilty pleas freely, voluntarily, and knowingly.

The Petitioner said that after he was incarcerated, he decided to file a motion to correct an illegal sentence because the State had not "file[d] a notice of enhancement to

enhance [him] to a Range II sentence." After receiving a copy of the plea agreement, the Petitioner noticed that "Range II, 100 percent" was written on the agreement, which "materially altered" the agreement the Petitioner had signed. The Petitioner denied that he waived his right to a notice of enhancement by pleading guilty.

Regarding the certified question, the Petitioner thought trial counsel would appeal two issues: the cite and release statute and the seizure of the vehicle without probable cause. He also wrote trial counsel a letter "discussing a breach of the plea agreement."

Trial counsel testified that he had been a licensed attorney since 2006 and that the majority of his practice was criminal defense. He was appointed to represent the Petitioner in 2012 or 2013 after the Petitioner's prior counsel developed a conflict. Trial counsel met with the Petitioner at the jail and, after the Petitioner's release, at trial counsel's office. During the meetings, they reviewed the discovery. The Petitioner entered his guilty pleas on March 4, 2014.

Trial counsel said that he liked the Petitioner and enjoyed working with him. Trial counsel thought that the Petitioner was very intelligent, well-read, and "ha[d] a mind for the law." Trial counsel and the Petitioner mostly discussed the constitutional issues surrounding his detention by police. Trial counsel thought the likelihood of success at trial depended on the trial court's granting the suppression motion, noting that the Petitioner was found with a pistol and large amounts of cocaine and money and that he did not have a "very good factual defense."

Trial counsel said that after the trial court denied the suppression motion, the State had little to no incentive to reduce the charge to a lesser offense. Accordingly, trial counsel tried to negotiate a plea agreement. Trial counsel and the Petitioner discussed the maximum and minimum sentences and eventually reached an agreement.

Trial counsel reviewed the plea agreement with the Petitioner. Trial counsel recalled that during their initial discussions, the Petitioner had problems with the "percentage" and "the range of service," but trial counsel did not recall the Petitioner's raising either issue at the guilty plea hearing. Trial counsel said that if the trial court had announced the terms of the plea agreement incorrectly, he would have said something to the trial court. Additionally, if the Petitioner had "leaned over" during the guilty plea hearing and said he had problems with the terms of the plea agreement, trial counsel would have asked the trial court for time to talk with him.

Trial counsel said that the Petitioner was well-spoken, and trial counsel did not think the Petitioner was too shy to express his concerns. Trial counsel did not recall telling the Petitioner to "just sit there and be quiet" and maintained that those comments were "harsh" and "out of character." Trial counsel conceded, however, that he did not

have a "word-for-word recollection" of their discussions at counsel table. He said that he would not contradict the Petitioner's memory of the events but would be surprised if he had made those statements.

Trial counsel said that he typed the terms of the plea agreement on a form he obtained from the trial court and reviewed it with the Petitioner. Trial counsel recalled that he and the State had originally agreed to plead "in Count 1 and the firearm." Trial counsel, however, "made an error on the count number." Additionally, when they got to court, the State wanted to add pleas to simple possession and criminal trespass. Trial counsel said that he wrote "simple possession" and "criminal trespass" on the plea agreement. Trial counsel said that he did not write "'Range II' here at '100 percent.'" Trial counsel thought the notation was the prosecutor's handwriting.

Trial counsel said that his discussions with the State prior to the court date did not include a specific range. He explained "that's the kind of – that's the kind of detail that you don't find out till the end." Trial counsel thought that the State had announced at the guilty plea hearing that the Petitioner was being sentenced as a Range II offender and asserted that the drug offense "would always be 100 percent, because it's a school zone."

On cross-examination, trial counsel acknowledged that if a client attempted to ask a question while the State or the trial court was making an announcement, he might have told the client to be quiet and that they would talk after the hearing. Trial counsel explained that after the Petitioner signed the plea agreement, trial counsel gave it to the prosecutor to sign. After the State insisted the Petitioner plead guilty to simple possession and criminal trespass, trial counsel "fixed the form," talked with the Petitioner about the changes, and had the Petitioner sign the form. In trial counsel's experience, the prosecutor who had the Petitioner's case would not sign a plea agreement until it had been completely filled out and signed by the defendant.

Trial counsel acknowledged that he had typed the range on the plea agreement as eight to twelve years, which was for a Range I offender. He agreed that he would not have written eight to twelve years if he were dealing with a Range II sentence, explaining, "It would have been a Range I in my mind." Regardless, he acknowledged that even if the Petitioner qualified as a Range II offender, it would not have been unusual for the State to allow him to plead guilty to a Range I sentence.

Trial counsel did not recall the State's filing a notice of enhanced punishment but acknowledged that he knew of no reason the State would have been prevented from seeking enhanced punishment. Trial counsel recalled that "the plea agreement existed only as a way to get ourselves in the Court of Criminal Appeals as quickly as possible, while at the same time, minimizing our total exposure for the case." Trial counsel and

the Petitioner thought that the trial court's ruling regarding the cite and release statute would be reversed and that the case would be dismissed on appeal.

Trial counsel said that he and the Petitioner had discussed challenging the initial stop to determine whether the Petitioner could be charged with trespass if he had been invited onto the property by a tenant. However, trial counsel decided not to raise the issue in the motion for new trial or on appeal.

In its ruling, the post-conviction court found that on three occasions during the guilty plea hearing, the Petitioner had been told "in great detail and with great clarity that the sentence he was receiving was 12 years at 100 percent." The post-conviction court found that the Petitioner's claim that he thought he was receiving eight years at one hundred percent was "simply not supported by the evidence," and that the Petitioner failed to prove by clear and convincing evidence that the plea was not voluntary. Regarding the certified question, the post-conviction court stated that the Court of Criminal Appeals ruled on the issue and determined that the stop was constitutional. The post-conviction court denied the petition for relief. On appeal, the Petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, the Petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When the Petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the [P]etitioner bears the burden of proving both that counsel's

performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the Petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause [the P]etitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Further, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the Petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead

guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). Further, we note that "the representations of the defendant, his lawyer, and the prosecutor at such a [guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings [because s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

At the post-conviction hearing, the Petitioner acknowledged that he knew he was accepting an effective sentence of fifteen years. Additionally, the Petitioner acknowledged that he knew the drug offense occurred in a drug-free school zone and that he would have to serve one hundred percent of the minimum sentence in his sentencing range before becoming eligible for release. The Petitioner thought he would have to serve eight years before becoming eligible for release, which was the minimum sentence for a Range I offender.

The record reflects that trial counsel reviewed the terms of the plea agreement and the revisions with the Petitioner and that they discussed the range and percentage of the sentence before accepting the revised plea agreement. The Petitioner was well-spoken and had prior experience with criminal proceedings. The Petitioner clearly was advised on multiple occasions during the plea proceedings that his total effective sentence was fifteen years at one hundred percent. Despite being given numerous opportunities to ask the trial court questions about the plea agreement, the Petitioner stated that he agreed with the terms of the plea agreement and that he wanted to enter the pleas. Additionally, trial counsel's testimony "confirm[ed] that the agreement was 12 years at 100 percent" for the drug conviction and that trial counsel would have stopped the proceedings if the terms did not comport with his understanding of the plea agreement. The record does not preponderate against the findings of the post-conviction court. See Tut Mayal Tut v. State, No. M2016-01673-CCA-R3-PC, 2017 WL 3475532, at *9 (Tenn. Crim. App. at Nashville, Aug. 14, 2017), perm. to appeal denied, (Tenn. Dec. 6, 2017). Further, as the post-conviction court noted, this court addressed the Petitioner's certified question issues on appeal and determined that the stop was lawful. See Malik Hardin, No. E2014-00873-CCA-R3-CD, 2015 WL 3794588, at *8. Moreover, we note that despite the Petitioner's allegations that he was invited onto the property by a tenant, he admitted at the suppression hearing that he was on KCDC's no-trespass list. This court previously has held "that if an officer knows that a person has been ordered to stay off housing project property and subsequently sees the person on the prohibited property, the officer can lawfully arrest the person for criminal trespass." State v. Ash, 12 S.W.3d 800, 804 (Tenn. Crim. App. 1999). The Petitioner is not entitled to relief.

- 11 -

## III.  Conclusion

The judgment of the post-conviction court is affirmed.


_____
NORMA MCGEE OGLE, JUDGE